Well, we're back with the final two cases of the day calendar. Judge Parker is with us, and the original panel is reconstituted. Let's begin with Mr. Shah. May it please the Court, Pratik Shah for the appellees. On the Till issue, appellants' argument today focused on what they believe the market demands. But the proper place to start is the principles and interpretation of present value articulated by the Supreme Court in Till, in which the Court made clear should result in the same approach to interest rate determinations across the Code, across Chapter 11, across Chapter 12, and across Chapter 13, which have identically worded provisions, and not just in the special class of Chapter 11 bankruptcies that Mr. Anker would like to create a special rule for. Well, you have footnote 14. Yes, Your Honor. You do have footnote 14. But the proper way to interpret the dictum in footnote 14 is to interpret in a way that's consistent with the principles and holding of Till, and not in a way to contradict those principles, and certainly not based on the flawed premise that all the Supreme Court was trying to do is approximate market interest rates. Now, here's what the Supreme Court laid out in its general principles of how to interpret present value as that term is used across the Code, including in the Chapter 11 provision at issue here. It said it's trying to capture two concerns in present value. One is the time value of money, and two is a risk premium. Now, it said in the formula rate is the best approach to get that because the time value of money can be measured by the prime rate or the T-bill rate, which we have here, no dispute about that. And then you add a risk premium to account for risk. What the Supreme Court said in Till, and this is at page 477 in the text, part of the holding and rationale, is it said those two factors are meant to exclude explicitly, in quotes, transaction costs and overall profit that are present in, quote, market lending rates. That is what Till is trying to capture in present value. It is trying to exclude the very transaction costs and overall profits that appear in their so-called efficient market. And the reason the Supreme Court gives is because bankruptcies are not like the market. They are court-administered plans. And what the Supreme Court says at page 477 in Till is in a court-administered plan, those sorts of transaction costs and profits are not permissible. Now, the others tried to say in their briefs, oh, that's only super profits or extraordinary profits. That language appears nowhere in the Supreme Court's opinion. It says overall profits and transaction costs. And if there's any doubt about that, the Supreme Court cites favorably this court's precedent in Valenti, which makes clear it says any degree of profit is impermissible in a bankruptcy atmosphere when you have the court administering it and not market players. That's also reinforced by footnotes. If you want to look at footnotes in Till, footnote 18 in Till says, look, if there was no risk here, surely the proper rate would simply be the prime rate. I don't think any of the clients of opposing counsel would line up to lend at the prime rate. And that's simply because the Supreme Court has articulated a different notion of present value that backs out transaction costs and profits and that simply is trying to reflect the time value of money and the risk premium, which is precisely what the bankruptcy court did below and certainly did not clearly err in trying to use the T rate to take care of the time value money and then had a four-day hearing in which it heard lots of expert evidence about these things. Now, that brings me to the second point. Judge Parker, you asked, well, how do you know when you get an efficient market? And the response from the other side was essentially, well, the bankruptcy court will know it when it sees it. They don't articulate any rule for that. But the bankruptcy court actually grappled with that question here. Like I said, it had a four-day hearing. They put in all the evidence that they mentioned to you, experts from both sides had all of this stuff. And then at pages 82 to 84 of the special appendix here, the bankruptcy court, based on hearing that four days of evidence, says, look, the so-called efficient market evidence that the other side puts on, that consisted of a market of three lenders, an opaque process in which they needed to do a combination of financing to get to the amount that the court would actually have in the replacement notes. And then it said that was all done on a semi-confidential basis. That is not an efficient market. The district court then affirmed the bankruptcy court's determination that this was not an efficient market. So even if you did have to go through the efficient market sort of theory that we think contradicts what the Supreme Court principles have set out, even if you had to do it, the bankruptcy court already did it here, pages 82 to 84. The district court affirmed it. This is at pages 244 of the special appendix. There's nothing left to do. That's a clear error standard. Everyone agrees that would be a clear error question, and it would be affirmed even if you got to that step. Now, they talk about they rely on the Sixth Circuit's decision in American Home Patient, which they say would create a purported split if this court were to affirm under the bankruptcy court's well-constructed and conceived decision faithful to the Supreme Court's decision until. That is not accurate. American Home Patient is an exceedingly odd case for the other side to be relying on, and here is exactly why. American Home Patient, the lenders lost in that case. What the Sixth Circuit did in that case is it approved. There are significant differences both in the code provisions and in the real world between Chapters 13 and Chapter 11.  Why not have different cases? Why not have different tests? Well, Your Honor, because the Supreme Court – Or finally tuned to Chapter 11. Sure. The reason is because the Supreme Court says you can't do that. At page 474 of Till, it says essentially Congress intended essentially the same approach to determination of interest rates to apply across the code, Chapter 11, Chapter 12, Chapter 13. It then cites in a footnote, footnote 10, it cites the provisions in which this exact same language appears. One of the provisions at site is the exact same Chapter 11 provision at issue here. So that's my doctrinal answer following Supreme Court precedent. Of course, it then proceeded to put in footnote 14. It did, but you can read footnote – Your categorical approach is not quite faithful to a somewhat complicated case. Well, Your Honor, here's my response on footnote 14. Footnote 14 should be read to be consistent with what the Supreme Court said in its principles and holding in the main text of its opinion. And there's a perfectly – Well, Your Honor, there is a perfectly way – a perfectly good way to reckon – You're pounding the table, but the case is more nuanced than your argument suggests, at least to me. Let me provide a more nuanced answer then, Your Honor. I think the nuanced way to construe footnote 14 is exactly how the lien holder's counsel, the other side, explained it to the bankruptcy court. And this is at page JA-3483 to 3484. And we agree with the way how they proffered an option to the District of Bankruptcy Court how to reconcile footnote 14 with language that I read earlier. And that's this. Look, Your Honor, you can look to the bankruptcy court. You can look to an efficient market, and that can inform how you apply the formula rate. That is, the bankruptcy court has to hear all sorts of evidence in determining what the appropriate risk premium is in the formula rate. Are you suggesting that the market – that an examination of the market factors can be used in evaluating what the appropriate risk premium is? Yes. It can inform – I don't want to answer. Yes, that's exactly what the other side said at JA-3483 to 84. We agree with that. You can – the bankruptcy court is free to look at their evidence on market rate to inform the risk premium. And the bankruptcy court did that here. It had all the evidence in front of it after a four-day hearing. It heard that evidence. It heard other experts. And what it said is, look, we think the risk premium is set – and by the way, the delta was about 1% from – It sounds like you all are getting pretty close on this. I think we are, Your Honor. And it comes down to a clear error review on whether the bankruptcy court made clear error in saying, look, the evidence that you guys are providing are based on an opaque three-lender market that had this unusual combo financing based on a semi-confidential basis, all in the bankruptcy court's opinion at pages 82 to 84. And it said, look, what I'm going to do is award a risk premium. And it, in fact, increased the risk premium from what our side had originally proposed, taking into account all the evidence. That's exactly what the Fifth Circuit and the Eleventh Circuit, the two other circuits that have confronted this question about what's the proper interest rate approach to apply in a Chapter 11 case, they both have affirmed bankruptcy courts in saying, look, it's not clear error. We're going to affirm the bankruptcy courts. And in both of those cases, the bankruptcy court applied the formula rate, and the courts affirmed those. And so that's what we ask that this court do here. And again, they cite American home patient. Here's what happened in American home patient. Just so I'm perfectly clear on this, your ideal approach is a slightly hybrid formula approach now. So you take the T-bill rate, you do the adjustments that are necessary, but in your view, the adjustments can involve, the amount of the adjustment can involve looking at the market to be sure the bankruptcy judge gets it right for cases that may be outliers, may not look like the garden variety Chapter 13 or the easy Chapter 11 case. That's exactly right, Your Honor. There's no need to tie the bankruptcy court's hands when they can look at all of the evidence and set a risk premium that's appropriate and back out impermissible transaction costs, overall profits that the Supreme Court instructed until. And I realize that I'm running out of time. Now, before you sit down, a quick question to follow up. So do I understand that your view is that a market-based rate is in some circumstances appropriate? Or is it just that in this case it's not appropriate? No, Your Honor. Our submission is that the formula rate is the approach that should be taken. That looks at two factors, time rate of money, T-rate, and then the risk premium. Now, in determining the risk premium as the bankruptcy court did here, it can look at all of the evidence in front of it. Part of that may be evidence of what the exit financing rate was. It can also look at all the other types of evidence that Chapter 11, that bankruptcy courts have been doing since till, and I think this is an important point, Your Honor, to kind of inform the workability. Since till, they do not cite a single case in which a court, any court, has actually applied an efficient market rate except for American home patient. In every other court, and the Fifth Circuit goes through this, they say virtually every court, whether it's because they started with the formula rate or they tried to do the efficient market and then got to a formula rate, every other court has applied the formula rate. And the reason why that's significant is twofold. One is because there's no shock to the markets that are happening from the bankruptcy court's decision. It's what virtually every court has ultimately done. It's set a formula rate. Lenders should not be surprised. Lending has not come to a halt. None of those things materialize. But the other reason it's important, the only case that they point to that's actually applied a so-called efficient market rate is the Sixth Circuit's decision in American home patient. In that case, the bankruptcy court applied the coerced loan approach that the Supreme Court and this court in Valenti expressly rejected. The problem with picking and choosing among the circuit approaches and having us look at other cases is that that's not generally what we like to do. We have a very sophisticated, very robust bar here in New York, a bankruptcy bar. And what we're trying to determine with the help of all of you all is what is the test that most carefully addresses the problems you all face, problems with a degree of complexity that a lot of other places around the country don't. Your Honor, I fully appreciate that. And I think what Judge Drain did in his extensive and well-considered opinion was to take those things into account and say, look, virtually every bankruptcy court post till that has come across this problem in Chapter 11 has ultimately applied the very formula rate that he ended up applying here that has never been reversed by any court of appeals. One last question. Do you think that the bankruptcy courts are competent to properly address the issue of market efficiency? Well, Your Honor, it's a complicated concept. We don't even know what the Supreme Court meant in its footnote dictum when it said that. What we do know from the Supreme Court's clear language is you can't account for transaction costs and profits. The other thing we know – This is all very interesting, but since you're almost out of time. Yes, yes. It really would be helpful. More than out of time. It really would be helpful. But in answer to the question I asked. Right. How courts – can bankruptcy courts do this? Mr. Anker said he thought that they were, that bankruptcy courts in the Southern District, for example, can handle that. What do you think? Well, Your Honor, here's what I think. That in every case that's happened so far, they can't point to a single case, whether the Southern District Bankruptcy Court or any other bankruptcy court in the country has found an efficient market rate. What the bankruptcy courts are capable of doing is exactly what they did in this case, which is look at all of the evidence, the complex evidence, and come up with a risk premium, and that evidence would include the so-called efficient market rate evidence that they proffer, and then come up with a risk premium. And then the district court can review it as it did here and affirm it, and then it comes to this court. Thanks very much. Thanks very much. Thank you, Your Honor. Mr. Anker, I'm going to give you some extra time since I gave him extra time. I appreciate that, Your Honor. Your Honor, this decision turns on a rule of law, not a question of fact. This is not a clear error question. The question is, what is the rule of law? And the rule of law should be precisely what the Sixth Circuit said in American Home Patients. Where there is an efficient market, that rate controls. How do we know that? How do we know there's an efficient market? When do we know? You let the bankruptcy judge in the first instance. But this is the easy case. This debtor had to go out and look for alternative financing, because if we agreed to not litigate the May call, they agreed to pay us in cash. And contrary to this notion, they testified that they used one of the leading investment bankers in America, that they went to the leading investment banks, and they went to their own equity sponsor, Apollo, who has $25 billion in cash on its balance sheet, and if it was being ripped off in any way, shape, or form, it could have provided the financing. Judge Drain did not say, this isn't an efficient market. What he said is, I don't care what the efficient market says, because the efficient market should never control, because it has profit in it, and it has transaction costs. The transaction costs on a loan like this are upfront fees. No one is suggesting that we're entitled to a dollar of upfront fees. Credit Swiss, J.P. Morgan, Chase would have gotten it. The profits, I urge this court to read till again, including the text. I agree the text controls where the distinction is made overtly regarding Chapter 13 cases. I also urge this court to look at what the U.S. Supreme Court has said in 203 North LaSalle and Redlax, two of its principal cases in which it has said as the governing principle, in a Chapter 11, the way to determine value is exposure to the market. That's the way you get to the right answer. And in answer to your question, Judge Parker, the judges on the bench here are among the most sophisticated in the country. I appear before them every day. They are former partners with years and years of experience at leading law firms in this city and town. They absolutely can do this. I live my life litigating valuation. This wasn't even a litigation because there was a demonstrable right. I'll end with this. This court in the Valenti case said the goal of Congress, when it allowed for you to get notes as a secured lender and be paid over time, rather than be paid cash immediately, is, quote, to put the lender in, quote, the same economic position as payment in full. Payment in full to my client on the effective date meant that they got $1.1 billion in cash. Payment to the one-and-a-halves meant they got $250 million in cash. Notes that the market said were worth $957 million in my client's case and $202 million in the one-and-a-half market lender's case, that's not the same economic position. I'm not in the same economic position as holding $1.1 billion in cash if I get notes that are worth, because the market rate is demonstrably below market, $957 million. Why were the findings below clearly erroneous? I don't argue they're clearly erroneous. I'm arguing, Judge Parker, and I think it's quite clear, that Judge Drain made an error of law, not an error of fact. He said, and I would urge the Court, if it hasn't, to read his opinion. He said the market rate doesn't matter. He said explicitly the Sixth Circuit misread Till. He said, and I want to comment on Mr. Shaw's comment, every lower court case in this district, in this circuit, and we have cited them, has said where there's an efficient market, the rule of law is it controls. This case is sui generis. No court in any, in this circuit, in any circuit around the country, but for this decision, has ever held that where there's a demonstrable efficient market, that rate doesn't control an 11. So, Judge Parker, I am not arguing that you should reverse because of clear error in making a factual finding. I'm arguing that the bankruptcy court started from the wrong rule of law. The rule of law you apply is where there is an efficient market, and I agree that in the first instance that's a determination for the bankruptcy court to make, but here it was a later. Where there is an efficient market in a Chapter 11, that rate controls. If you started there, then the factual finding follows as the day follows the night, because here they went out to three leading lenders, as well as their own equity sponsor, in a process they described as competitive, in a process they said produced the best possible available rate, and it produced the interest rates it produced, and those rates should have been the controlling rate. Thank you. Your Honor, I obviously rest on the papers on the MAKO, but we certainly take that issue very seriously. Thank you. Thank you all. Thank you all. Some of the same, but somewhat different parties. Next case.